IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANDREW P. KALICK, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 08-2972 (JBS/AMD) |
| v. | : | |
| NORTHWEST AIRLINES CORPORATION & NORTHWEST AIRLINES, INC., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Andrew P. Kalick
47 George Street
Mount Ephraim, NJ 08059
     Plaintiff Pro Se

David N. Zeehandelaar, Esq.
BLANK ROME, LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
     -and-
Elaine D. Solomon, Esq.
BLANK ROME, LLP
One Logan Square
Philadelphia, PA 19103
     Attorneys for Defendants

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

Plaintiff Andrew P. Kalick, proceeding pro se, filed this

action against Defendants Northwest Airlines Corporation and

Northwest Airlines, Inc. ("Northwest"), alleging that Northwest

acted unlawfully when it oversold a flight for which Plaintiff

had purchased a ticket, "bumped" Plaintiff from the flight, and

failed to provide him with "a written statement explaining the

terms, conditions, and limitations of denied boarding compensation" in accordance with Department of Transportation ("DOT") regulations.  14 C.F.R. § 250.9(a).  Plaintiff asserts a claim pursuant to the DOT regulations, and also asserts common law claims for breach of contract and fraud, seeking $163,000 in compensatory and punitive damages.

Presently before the Court is Defendants' motion for summary judgment [Docket Item 24].  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim premised upon the DOT regulations (which do not give rise to a private cause right of action) and Plaintiff's claim for punitive damages (which is federally preempted by the Airline Deregulation Act of 1978).  In addition, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (which are held not to be federally preempted), and will dismiss such claims without prejudice to his right to pursue those claims in a court of competent jurisdiction.

## II.  BACKGROUND

### A.   Facts

The facts underlying this dispute are as follows.  On July 17, 2007, Plaintiff purchased from the website CheapTickets.com a round-trip ticket on Northwest Airlines between Kansas City, Missouri and Philadelphia, Pennsylvania, with a layover in

2

Minneapolis-St. Paul, Minnesota.  (Kalick Dep. Ex. 1 at 1.)
Plaintiff, who resides in Mt. Ephraim, New Jersey, planned to
drive his brother's car from New Jersey to Kansas City, where his
brother lives, on July 18, 2007, to leave the car with his
brother in Kansas City, and to fly to Philadelphia from Kansas
City on July 19, 2007.  (Kalick Dep. at 4, 12, 15.)

After dropping off his brother's car at the Kansas City
airport, Plaintiff arrived at the Northwest passenger check-in
area at around 12:00 p.m., nearly two hours before the scheduled
departure of his 1:50 p.m. flight.  (Id. at 18; Kalick Dep. Ex. 1
at 1.)  When Plaintiff reached the front of the line, the
Northwest agent asked him what flight he was on, and when he
informed her that he was traveling to Philadelphia with a layover
in Minneapolis-St. Paul, the agent stated that "the flight is
full" and that Northwest was "not able to put [him] on the
flight."  (Kalick Dep. at 23-24.)  Without providing Plaintiff
with a written statement on the DOT's regulations concerning the
compensation of passengers bumped off of oversold flights, see 14
C.F.R. § 250.9, the Northwest agent advised Plaintiff that she
had instead booked him on an American Airlines flight to
Philadelphia with a layover in Dallas, which was scheduled to
depart from Kansas City at 1:15 p.m.[1]  (Kalick Dep. at 25.)  The

_____

[1]  The 1:15 p.m. flight was scheduled to arrive in Dallas at
2:45 p.m., and the flight from Dallas to Philadelphia was
scheduled to depart at 4:55 p.m.  (Kalick Dep. Ex. 2 at 2.)

3

agent printed out an itinerary for the American Airlines flight and sent Plaintiff to the American Airlines ticket counter to check in.  (Id.)

Plaintiff arrived at the American Airlines check-in area at 12:30 p.m. and went to the back of the line behind approximately twenty-five people.  (Id. at 27.)  By the time he reached the front of the line, it was 1:00 p.m., and the American Airlines ticket agent informed him that he would not be able to make the 1:15 p.m. flight; instead, she printed out a ticket for the next flight to Dallas, which was scheduled to depart at 2:40 p.m. (Id. at 31-32.)  Plaintiff boarded the 2:40 p.m. flight, which arrived in Dallas at around 4:15 p.m., about five or ten minutes late.  (Id. at 35.)

Although his flight from Dallas to Philadelphia was scheduled to depart at 4:55 p.m., see Note 1, supra, meaning that Plaintiff had forty minutes from the time of his arrival in Dallas to make his connection, Plaintiff missed his flight from Dallas to Philadelphia for reasons that are not entirely apparent from the record.  (Kalick Dep. at 37-40.)  Plaintiff spoke with multiple American Airlines employees, attempting to secure a later flight to Philadelphia, but, according to Plaintiff, these employees "gave [him] the cold shoulder."  (Id. at 40.)  Eventually, American Airlines booked Plaintiff on the flight to Philadelphia leaving at 6:40 a.m. the next morning.  (Id. at 44.)

Plaintiff spoke with an American Airlines agent about receiving a voucher for a hotel room, but the agent denied his request.  (Id. at 51.)  While at the Dallas airport, Plaintiff had no contact with anyone from Northwest Airlines.  (Id. at 52.)  Plaintiff spent the evening in the airport, boarded the 6:40 a.m. flight to Philadelphia the following morning, and arrived in Philadelphia at approximately 11:00 a.m. on July 20, 2007.  (Id. at 54.)

According to the Amended Complaint, Plaintiff wrote to Northwest CEO Douglas Steenland to "demand . . . compensation" for his experience.  (Am. Compl. at 2.)  Plaintiff was offered a travel voucher for $300, which he deemed "unacceptable."  (Id.)

**B.  Procedural History**

Plaintiff filed this action against Northwest on June 16, 2008 [Docket Item 1] and filed an Amended Complaint [Docket Item 4] shortly thereafter.  Plaintiff alleges that Defendants violated DOT regulations concerning the compensation of passengers bumped from oversold flights, see 14 C.F.R. § 250.9, and asserts common law claims for breach of contract and fraud.

Following discovery, Defendants moved for summary judgment [Docket Item 24], arguing that Plaintiff had failed to adduce evidence sufficient to support any of his claims.  In a Letter Order dated June 23, 2009, the Court wrote to the parties to request supplemental briefing on the "threshold issue . . . [of] whether the DOT regulations upon which Plaintiff's federal claim

is based provide for a federal right of action." (Docket Item 28 at 1.) The Court further noted that "if no private right of action exists for Plaintiff's claim based upon the DOT's regulations (upon which Plaintiff asserts that federal question jurisdiction over this dispute is based), then doubts would exist as to whether the Court should exercise jurisdiction over the remaining claims in the case." (Id. at 2.) As the Court explained:

> It appears that diversity of citizenship may also be lacking as a basis for jurisdiction if the amount in controversy is not greater than $75,000 under 28 U.S.C. § 1332; while Plaintiff seeks to recover more than this statutory minimum in punitive damages, punitive damages claims of passengers "bumped from an overbooked flight" have been held to be preempted by the Airline Deregulation Act. See, e.g., West v. Northwest Airlines, Inc., 995 F.2d 148, 152 (9th Cir. 1993)[.]

(Id. at 2-3.) Thereafter, the parties filed supplemental briefs in accordance with the Court's Letter Order.[2]

---

[2] Plaintiff subsequently moved to strike Defendants' supplemental brief, arguing that Defendants' preemption argument therein went beyond the scope of the Court's Letter Order. In its July 15, 2009 Order, the Court explained:

> While the Court does not agree that preemption went beyond the scope of the Court's request for supplementation, in light of Plaintiff's pro se status and his request for "leave . . . to file a response that shall be limited to addressing Defendants['] preemption [arguments]," (Pl.'s Br. at 3-4), the Court will afford Plaintiff the opportunity to respond to the matters of preemption raised in Defendants' supplemental brief[.]

(Docket Item 32 at 2.) Plaintiff thereafter filed a supplemental opposition brief addressing Defendants' preemption arguments.
Plaintiff also filed a petition for a writ of mandamus with

## III. DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence

---

the Court of Appeals, arguing that this Court should have granted his motion to strike Defendants' supplemental brief.  Whether it is characterized as an application for a writ of mandamus or an interlocutory appeal, Plaintiff's filing with the Court of Appeals does not deprive this Court of jurisdiction to resolve the matters raised in the motion presently under consideration. A "petition for a writ of mandamus does not deprive a district court of jurisdiction over the underlying case." Bates v. Sullivan, 6 Fed. Appx. 425, 427 n. 1 (7th Cir. 2001); see also Francis v. Joint Force Headquarters Nat. Guard, No. 05-4882, 2009 WL 1810737, at *5 (D.N.J. June 24, 2009) (citing numerous cases so holding).

Nor does an effort to take an appeal from a patently non-appealable interlocutory order deprive a district court of jurisdiction over the underlying case:

> An appeal from a non-appealable judgment or order is sometimes characterized as a nullity.  Indeed, a contrary conclusion would enable a litigant temporarily to deprive a district court of jurisdiction at any non-critical or critical juncture including trial itself, thus bringing proceedings in the district court to a standstill while a non-appealable ruling wends its way through the appellate process.  This "great potential for disruption" has been recognized by this court.

Venen v. Sweet, 758 F.2d 117, 121 (3d Cir. 1985) (internal quotations, citations, and footnotes omitted).  A motion to strike an adversary's pleading is just such a patently non-appealable order.  See, e.g., In re Faragalla, 422 F.3d 1208, 1210-11 (10th Cir. 2005).  In short, this Court's jurisdiction to resolve the instant motion is not impacted by Plaintiff's filing with the Court of Appeals.

7

in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

### B.   Claim Based Upon Department of Transportation Regulations Governing Airline Oversales

Plaintiff purports to bring a claim pursuant to the DOT regulations governing airlines' overselling practices, 14 C.F.R.

§ 250.1, <u>et seq</u>.[3]  Under the version of the regulations in effect

at the time the events underlying this lawsuit took place,[4] an

airline was required to

> pay compensation to passengers denied boarding
> involuntarily from an oversold flight at the rate of 200
> percent of the sum of the values of the passenger's
> remaining flight coupons up to the passenger's next
> stopover, or if none, to the passenger's final
> destination, with a maximum of $400.  However, the
> compensation shall be one-half the amount described
> above, with a $200 maximum, if the carrier arranges for
> comparable air transportation, or other transportation
> used by the passenger that, at the time either such
> arrangement is made, is planned to arrive at the airport
> of the passenger's next stopover or if none, at the
> airport of the passenger's destination, not later than 2
> hours after the time the direct or connecting flight on
> which confirmed space is held is planned to arrive in the
> case of interstate air transportation, or 4 hours after
> such time in the case of foreign air transportation.

§ 250.5.

The regulations further provide that a passenger denied

boarding involuntarily from an oversold flight is not eligible

for such compensation if "[t]he carrier arranges comparable air

transportation . . . at no extra cost to the passenger, that at

the time such arrangements are made is planned to arrive at the

---

[3]  The regulations state that the DOT's "[p]olicy regarding
denied boarding" is that "[i]n the event of an oversold flight,
every carrier shall ensure that the smallest practicable number
of persons holding confirmed reserved space on that flight are
denied boarding involuntarily."  § 250.2a.

[4]  Amended regulations went into effect on May 18, 2008,
which doubled the amount of compensation available as denied
boarding compensation.  <u>See</u> 73 Fed. Reg. 21026-01 (Apr. 18,
2008).  The amendments to the regulations do not affect the
substance of the analysis herein.

airport of the passenger's next stopover or, if none, at the airport of the final destination not later than 1 hour after the planned arrival time of the passenger's original flight or flights." § 250.6(d).  Finally, the regulations require that "[e]very carrier shall furnish passengers who are denied boarding involuntarily from flights on which they hold confirmed reserved space immediately after the denied boarding occurs, a written statement explaining the terms, conditions, and limitations of denied boarding compensation, and describing the carriers' boarding priority rules and criteria." § 250.9(a).  The regulations require that the following text on a "[p]assenger's [o]ptions" appear at the bottom of such a written statement: "Acceptance of the compensation may relieve (name of air carrier) from any further liability to the passenger caused by its failure to honor the confirmed reservation.  However, the passenger may decline the payment and seek to recover damages in a court of law or in some other manner." § 250.9(b).

     As courts have consistently recognized, "[t]he plain language of the regulation indicates that passengers retain the option . . . of pursuing compensatory damages <u>in state court</u>." <u>West v. Northwest Airlines</u>, 995 F.2d 148, 152-53 (9th Cir. 1993) (emphasis added); <u>see also</u>, <u>e.g.</u>, <u>Weiss v. El Al Israel Airlines, Ltd.</u>, 433 F. Supp. 2d 361, 370 (S.D.N.Y. 2006), <u>aff'd</u> 309 Fed. Appx. 483 (2d Cir. 2009).

However, with regard to the separate issue of "whether the regulations not only permit a state contract law action for being bumped, but affirmatively provide for a federal right of action, whether for bumping or anything else," courts within and outside this Circuit have consistently answered this question in the negative.  Weiss, 433 F. Supp. 2d at 370; see also Thierry v. Delta Airlines, No. 94-0004, 1994 WL 88069, at *1 (E.D. Pa. Mar. 17, 1994).  As one such court explained in persuasive terms:

> This question turns on congressional intent, and specifically whether the statutes enforced by the regulations at issue, spanning various chapters of the Federal Aviation Act in Title 49, display Congress' intent to "create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286-92 (2001).  In this case . . . no statute enforced by these regulations could, under Sandoval, be taken as creating a private remedy, nor, in fact, do the regulations even purport to provide one.  See, e.g., Bonano v. East Caribbean Airline Corp., 365 F.3d 81 (1st Cir. 2004) (holding FAA in general provides no private right of action); Casas v. Am. Airlines, Inc., 304 F.3d 517 (5th Cir. 2002) (holding ADA, which amended FAA, provides no private right of action); see also Boswell v. Skywest Airlines, Inc., 361 F.3d 1263 (10th Cir. 2004) (holding provision of FAA prohibiting discrimination against handicapped persons, 49 U.S.C. § 41705, provides no private right of action); Thierry v. Delta Airlines, No. Civ. A. 94-0004, 1994 WL 88069, at *1 (E.D.Pa. March 17, 1994) ("Neither the Federal Aviation Act of 1958, 72 Stat. 731 as amended by the Airline Deregulation Act of 1978, 49 U.S.C. App. § 1301 et seq. nor the regulations issued thereunder, Title 14 CFR § 250.1 et seq. provide a cause of action for a passenger holding a ticket without confirmed reserved space (open ticket) who was refused boarding.").  Instead, the sole enforcement mechanism intended for a violation of the regulations at issue (and the FAA in general) is a civil action commenced by the Secretary of Transportation or Attorney General.  See, e.g., 49 U.S.C. § 46101 (permitting individual to file complaint with Secretary of

11

> Transportation for violation of FAA, and Secretary to investigate such complaints and any suspected violations); id. § 46106 (stating Secretary of Transportation may bring civil action to enforce FAA); id. § 46107 (stating Attorney General may bring civil action upon request by Secretary of Transportation); id. § 46301 (specifying civil penalties for violations of various provisions of FAA and underlying regulations). Thus, there is no private remedy for violation of the provisions of the regulations relied on [herein.]

Weiss, 433 F. Supp. 2d at 370-71 (footnote omitted).

Plaintiff has identified no authority to the contrary, and the Court finds the analysis in Weiss and the cases cited therein to be persuasive. The Court accordingly concludes that the DOT regulations which underlie Plaintiff's federal law claim do not create a federal right of action. To the extent that Plaintiff's Amended Complaint asserts a claim pursuant to the DOT regulations, therefore, Defendants' motion for summary judgment will be granted.

## C.   Preemption Under the Airline Deregulation Act

The Court having entered summary judgment as to the lone federal claim asserted herein, the only claims remaining in this action are Plaintiff's contract and tort claims premised upon New Jersey common law.[5] Defendants argue that these claims are

---

[5] Plaintiff's contract claim is premised upon his contention that Northwest "failed to provide written explanation of denied boarding compensation and boarding priorities" in accordance with DOT regulations and Northwest's own "Domestic General Rules." (Am. Compl. at 2); see also West, 995 F.2d at 152-53 ("[t]he plain language of the regulation indicates that passengers retain the option . . . of pursuing compensatory damages in state court"). His fraud claim is likewise based upon

preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 1301, et seq.  For the reasons that follow, the Court concludes that Plaintiff's remaining claims are not preempted by the ADA, although the Court finds that Plaintiff's asserted entitlement to an award of punitive damages is so preempted.

"In 1978, Congress determined that 'maximum reliance on competitive market forces' would favor lower airline fares and better airline service, and it enacted the Airline Deregulation Act."  Rowe v. New Hampshire Motor Transport Ass'n, --- U.S. ----, 128 S. Ct. 989, 993 (2008) (some internal quotations and citations omitted) (quoting 49 U.S.C. § 1302(a)(4)).  The ADA contains a provision expressly preempting a category of state laws bearing upon commercial air travel:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added).

The Supreme Court addressed the preemption clause of the ADA in Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992).  Rowe recently summarized Morales' analysis as follows:

In Morales, the Court determined: (1) that "[s]tate

---

Northwest's failure to disclose information concerning its denied boarding compensation policies, upon which Plaintiff contends he relied to his detriment.  (Am. Compl. at 2.)

> enforcement actions <u>having a connection with, or reference to</u>" carrier "'rates, routes, or services' are pre-empted," 504 U.S., at 384 (emphasis added); (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect," <u>id.</u>, at 386 (internal quotation marks omitted); (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, <u>id.</u>, at 386-387 (emphasis deleted); and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption-related objectives, <u>id.</u>, at 390 . . . .
>
> Finally, <u>Morales</u> said that federal law might not pre-empt state laws that affect fares in only a "tenuous, remote, or peripheral . . . manner," such as state laws forbidding gambling. 504 U.S., at 390 (internal quotation marks omitted). But the Court did not say where, or how, "it would be appropriate to draw the line," for the state law before it did not "present a borderline question." <u>Ibid.</u> (internal quotation marks omitted).

<u>Rowe</u>, 128 S. Ct. at 995.

In light of these principles, the Supreme Court has held that the ADA preempts lawsuits based upon consumer fraud statutes which target deceptive airline advertising, <u>Morales</u>, 504 U.S. at 391, or airline practices relating to frequent flier programs, <u>American Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 226-228 (1995). However, the Court has held that consumers' contract-based claims are not so preempted:

> We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's "enact[ment] or enforce[ment] [of] any law, rule, regulation, standard,

or other provision having the force and effect of law"
within the meaning of [§] 1305(a)(1).  A remedy confined
to a contract's terms simply holds parties to their
agreements – in this instance, to business judgments an
airline made public about its rates and services.

Id. at 228-29 (footnotes and some citations omitted).

The Court of Appeals for the Third Circuit has adopted a

narrow reading of Morales, Wolens, and preemption under the ADA,

particularly with regard to state-law tort claims:

> Wolens . . . indicated that Morales was not open-ended
> and that preemption did not apply to all state law
> affecting the passenger-airline relationship.  Once
> again, the Court did not rule on state tort law claims,
> but significantly, observed that the airline had not
> urged preemption of personal injury claims related to
> airplane operations.  Moreover, the government in its
> amicus curiae brief stated "'[i]t is . . . . unlikely
> that Section 1305(a)(1) preempts safety-related
> personal-injury claims relating to airline operations.'
> " Id. (quoting Brief for United States as Amicus Curiae
> 20 n. 12).  Even though the Wolens majority did not
> directly address whether common law torts were preempted,
> several Justices did.  Justice Stevens argued that
> "Congress did not intend to give airlines free rein to
> commit negligent acts subject only to the supervision of
> the Department of Transportation, any more than it meant
> to allow airlines to breach contracts with impunity."
> Id. at 237 (Stevens, J., concurring in part and
> dissenting in part).  After all, the standard of ordinary
> care, like contract principles, "is a general background
> rule against which all individuals order their affairs."
> Id. at 236-37.
>
> In short, the Supreme Court, although it has not yet
> directly addressed the preemption clause as applied to
> state tort claims, has strongly indicated that they would
> not be barred.

Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186,

191-92 (3d Cir. 1998) (some internal quotations and citations

omitted, emphasis added).

15

In light of the above authority, the Court concludes that Plaintiff's contract and fraud claims against Northwest are not preempted by the ADA. As to Plaintiff's claim for breach of contract, Wolens makes plain that such claims are not preempted. See Wolens, 513 U.S. at 228-29. And, as to Plaintiff's fraud claim, which appears to be premised upon the same alleged nondisclosure as his contract claim, see Note 5, supra, Taj Mahal Travel dictates that such "state tort claims" are not preempted. See Taj Mahal Travel, 164 F.3d at 191-92. To the extent that Defendants' summary judgment motion is premised upon the preemption of Plaintiff's state-law claims, then, the Court will deny Defendants' motion.

However, the Court agrees with Defendants that Plaintiff's claim for punitive damages is preempted by the ADA. Those courts to have addressed the question have consistently held that punitive damages for claims relating to airlines' oversale and disclosure practices are preempted by the ADA, because "[r]ather than merely holding parties to the terms of a bargain, punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement.'" Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (quoting Wolens, 513 U.S. at 233); see also West, 995 F.2d at 152 ("Since punitive damages by their very nature seek to punish the entity against whom they are

16

awarded, such damages awarded in response to bumping resulting from airline overbooking would be contrary to the goals of deregulation");[6] Flaster/Greenberg P.C. v. Brendan Airways, LLC, No. 08-4333, 2009 WL 1652156, at *6 (D.N.J. June 10, 2009); Williams v. Midwest Airlines, Inc., 321 F. Supp. 2d 993, 996 n.4 (E.D. Wis. 2004); Breitling U.S.A., Inc. v. Federal Exp. Corp., 45 F. Supp. 2d 179, 185 (D. Conn. 1999); Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc., 972 F. Supp. 665, 673 (N.D. Ga. 1997).[7]

Because the ADA preempts claims for punitive damages in tort suits arising out of "bumping resulting from airline

---

[6] As the Supreme Court has made clear, with regard to the preemption issue, "it makes no difference whether a state law is consistent or inconsistent with federal regulation." Rowe, 128 S. Ct. at 995 (internal quotations and citations omitted).

[7] While the Court of Appeals in Taj Mahal Travel permitted a plaintiff asserting a defamation claim against an airline to assert a claim for punitive damages, the result in that case derived from the fact that "defamation is so foreign to regulations on prices, routes, and services that it is unlikely that an award of [punitive] damages would offend Congressional intent." Taj Mahal Travel, 164 F.3d at 195. By contrast, Plaintiff's contract and fraud claims, which arise out of Northwest's allegedly misleading disclosure of its policies concerning ticket oversales, manifestly "ha[s] a connection with, or reference to carrier . . . services," Rowe, 128 S. Ct. at 995, as the holdings of the above-cited cases make plain. See, e.g., Panitch v. Continental Airlines, No. 06-3611, 2008 WL 906240, at *4 (D.N.J. Mar. 31, 2008) (ADA's reference to "services" "includes contractual features of air transportation") (internal quotations and citations omitted). The contract and fraud claims at issue herein clearly relate directly to airline services, whereas a defamation claim against an airline is, as the Court of Appeals concluded, not so related. Taj Mahal Travel, 164 F.3d at 195.

overbooking," <u>West</u>, 995 F.2d at 152, the Court will grant
Defendants' motion for summary judgment as to Plaintiff's
entitlement to an award of punitive damages.

**D.  Supplemental Jurisdiction**

Having dismissed the lone federal claim asserted in this
matter, and having addressed the questions of federal preemption
that bear upon Plaintiff's claims, the Court, for the reasons
that follow, declines to exercise supplemental jurisdiction over
Plaintiff's remaining state-law claims.[8]  As this Court recently

---

[8]  Jurisdiction for this lawsuit was originally premised
upon the federal question presented by Plaintiff's claim based
upon the DOT regulations.  (Am. Compl. at 1.)  The Court notes
that 28 U.S.C. § 1332 affords no alternative basis for continued
original jurisdiction over this dispute, because the amount in
controversy is not greater than $75,000.  As an initial matter,
it is well-settled that "[t]he party invoking federal
jurisdiction has the burden to prove the requisite [statutory]
amount by a preponderance of the evidence." <u>Advance America
Servicing of Arkansas, Inc. v. McGinnis</u>, 526 F.3d 1170, 1173 (8th
Cir. 2008).  As the Court of Appeals has made clear, "if
. . . [the] law denies recovery for punitive damages, the federal
court would be required to disregard the value of such a claim
asserted to be included within the jurisdictional amount."
<u>Samuel-Bassett v. KIA Motors America, Inc.</u>, 357 F.3d 392, 397-98
(3d Cir. 2004).
        As the Court's analysis, <u>supra</u>, makes clear, Plaintiff's
claim for punitive damages is preempted by the ADA – that is, the
law "denies recovery" for such damages, <u>id.</u>, and they do not
figure into the calculation of jurisdictional amount.  Nor has
Plaintiff alleged (much less adduced evidence to suggest) that he
incurred $75,000 or more in <u>compensatory</u> damages as a result of
staying in the Dallas airport for one unanticipated night and
arriving in Philadelphia one day later than he had planned.
Because Plaintiff has not "prove[n] the requisite amount by a
preponderance of the evidence," <u>Advance America Servicing</u>, 526
F.3d at 1173, there is no basis for original diversity
jurisdiction over this lawsuit.

explained:

> Under 28 U.S.C. § 1367(c), "[t]he district courts may
> decline to exercise supplemental jurisdiction over a
> [state law] claim . . . if the district court has
> dismissed all claims over which it has original
> jurisdiction." Id. § 1367(c). As a general rule, absent
> exceptional circumstances, "jurisdiction [over claims
> based on state law] should be declined where the federal
> claims are no longer viable." Shaffer v. Albert Gallatin
> Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984). To
> determine whether exceptional circumstances exist, the
> Court must consider principles of judicial economy,
> convenience, and fairness to litigants. Borough of West
> Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)
> ("where the claim over which the district court has
> original jurisdiction is dismissed before trial, the
> district court must decline to decide the pendent state
> claims unless considerations of judicial economy,
> convenience, and fairness to the parties provide an
> affirmative justification for doing so"). The decision
> to exercise or decline supplemental jurisdiction is left
> to the sound discretion of the district court judge. De
> Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir.
> 2003).

Collins v. County of Gloucester, No. 06-2589, 2009 WL 2168704, at

*1 (D.N.J. July 17, 2009) (emphasis added).

The Court does not find that exceptional circumstances

justify its continued exercise of jurisdiction over Plaintiff's

state-law claims. In urging this Court to retain jurisdiction

over this matter, Northwest argues that "it would be a waste of

judicial and litigant resources, time and effort for this court

to dismiss all claims, to be heard in another forum." (Defs.'

Supp. Br. at 4.) The Court is not convinced. As this Court

explained in Collins:

> The work done in this Court is easily transferred to
> state court without duplication of efforts, consequently

> expediting any state court proceedings Plaintiff [Kalick]
> chooses to initiate.   Neither judicial economy,
> convenience, nor fairness justify this Court's continued
> consideration of Plaintiff's solely state law claims.

Collins, 2009 WL 2168704, at *2 (also observing that "a state

court, . . . by virtue of that judge's expertise and principles

of comity[,] is in a better position to decide the questions of

state law raised by Plaintiff['s] claims").[9]  These same

considerations are applicable here, and, as in Collins, no

extraordinary basis has been demonstrated to justify the Court's

continued exercise of jurisdiction herein.

     Having dismissed the federal cause of action asserted

herein, the Court declines to exercise supplemental jurisdiction

over Plaintiff's remaining state-law claims and will dismiss

those claims for lack of subject matter jurisdiction, without

prejudice to Mr. Kalick's right to pursue such claims in a court

of competent jurisdiction.

## IV.  CONCLUSION

     For the reasons discussed above, the Court will grant

Defendants' motion for summary judgment as to Plaintiff's claim

premised upon the DOT regulations, as well as Plaintiff's claim

for punitive damages.  The Court finds that Plaintiff's state law

claims for breach of contract and fraud are not federally

---

     [9]  Plaintiff's right to pursue his state-law claims on a
timely basis in state court is preserved by 28 U.S.C. § 1367(d)'s
tolling provision.

preempted, but that the disputes in these claims do not reach the $75,000 threshold required for invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for breach of contract and fraud, and will dismiss such claims without prejudice to Plaintiff's right to litigate such matters in state court.  The accompanying Order is entered.


**August 7, 2009**                          **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge


21